23-7040, United States v. Brown, Counsel for Appellant, if you'd make your appearance and proceed, please. Thank you, Your Honor, Counsel. May it please the Court, my name is Shira Keeval, I'm an Assistant Federal Defender in Denver, and I represent William Brown. In this first argument, I will be discussing Mr. Brown's trial for killing his cellmate at the Oklahoma State Penitentiary, Mark Lawhead. An issue on the appeal is the denial of a requested self-defense instruction. The main question is what some evidence of a reasonable, subjective belief looks like. Our claim is that the government uses circumstantial evidence to prove this sort of mens rea every day of the week, and that Mr. Brown was allowed to do the same. I think it's very clear what the law is that underlies this case. First, a person... I'm looking at you, I'm attentive. A person may use deadly force that he reasonably believes is necessary to protect himself from an imminent threat of death or great bodily harm. Two, a district court must give a self-defense instruction upon request if any evidence could lead a reasonable juror to acquit the defendant of murder, based on a reasonable doubt that the defendant may have acted in self-defense. And three, questions of reliability and weight of the evidence are for the jury. Thus, it doesn't matter if there is overwhelming contradictory evidence. The instruction may only be denied if the defense is foreclosed as a matter of law. In this case, the defense was not foreclosed. The district court erred because there was some evidence that Mark Lawhead was the initial aggressor inside the prison cell. And what evidence was there? I mean, no one saw what went on in that prison cell. There's a difference between circumstantial evidence and speculation. And what I have a hard time seeing is where we have anything but speculation as to what went on in that cell. So help me with that, please. Well, and Your Honor, there's not testimony, either supporting the government's case or ours, of someone who saw what happened in the prison cell. And so both the government and Mr. Brown were relying on circumstantial evidence. Sure, but the burden is yours. It's not the government's on showing that you have a basis for the defense. And what I'm saying is, if we're left in this amorphous phase of, well, I wonder what happened in the cell, you lose, right? No, Your Honor. The question here is reasonable doubt. I think that there's a difference between a sort of deus ex machina kind of argument that you don't foresee from any of the evidence of, maybe some other gang member came into the cell, maybe there was a jailer who came into the cell. And that's not what we're asking for. We're looking, I think, in the briefs, we've identified a significant amount of evidence. Two people in the cell, one ends up dead. And what do you have more than that? We have what the government has, which is motive. This equivalence, it seems to me, is false. What the government has doesn't matter. You have to show an entitlement to the instruction, and that has to be based upon more than speculation, right? Correct, Your Honor. Okay, then tell me what you have more than speculation that, in fact, there was a basis, subjective and objective, that would justify the defense. We have two individuals who were locked inside of a cell together for three weeks. They would have known that they had been certainly rival gang members. Mr. Lawhead would have known that Mr. Brown was saying that he wasn't a member of the Indian Brotherhood anymore. They would have known that that is a very difficult thing to do based on, again, this is the testimony of the gang expert, and that likely Mr. Brown would have been subject to violence from his gang, and that he would have needed to wipe out his tattoos. Neither of those things has happened. So we're in a situation where Mark Lawhead would reasonably be suspicious of what was going on and of Mr. Brown. We also have a situation where— And vice versa. Correct, Your Honor, but all we need is evidence that supports a reasonable doubt. Well, again, you need evidence so that you can have an inference, not speculation. So you've got two people locked in a cell. One comes up murdered, and we have no idea. We can tell from the evidence, the physical evidence, there was a struggle. There's evidence of a struggle, but there's absolutely no evidence as to who started the altercation. And the fact that they were in rival gangs doesn't, to me, weigh on that question one way or the other, as to who instigated this conflict. I think the case law is clear that motive is relevant, even if it's not required, but I'll continue. But the motive goes both ways. They're rival gang members in the same cell. And, Your Honor, this is a conversation for the jury to have when evidence goes both ways of what weight to give that evidence and what reasonable inferences to make from it. So the government's argument below to the jury was, this is a man who was lying in wait. What's the basis for that, that a jailer saw Mark Lawhead asleep? Well, that jailer also saw Mr. Brown asleep. We get to make the same argument for the same reasonable inference, that this was an ambush. We also have evidence from the medical examiner that Mr. Lawhead had methamphetamine in his system, that it was a low-to-medium quantum of methamphetamine. Counsel, I'm sorry to interrupt you, but you and I have a complete difference of understanding of the difference between speculation and evidence. Now, my colleagues have twice asked you for evidence. What's the evidence? And I'm asking now for the third time on that, what is the evidence that you have? Not speculate, but absolutely, I swear under oath, this is what happened. Your Honor, we don't need that. The government did not have that. The closest thing the government had, and they had to prove their case beyond a reasonable doubt. Excuse me, counsel. You're the one that has to have that. You're claiming that you weren't given the opportunity to raise a self-defense. Self-defense is evidence that you have to come up with, not the government. And Your Honor, we need to identify evidence in the record. We don't need to present affirmative evidence. And I'll continue. I haven't finished going through. I think the medical examiner says these wounds are consistent with a dramatic fall, but a fall onto this stool below this top bunk. We have a photograph of this stool. I thought it was that it was unlikely but possible. And that was a response to a different question, Your Honor. So certainly there, again, even if the evidence is overwhelmingly in favor of the government, we're still entitled to the instruction. So what? Somebody fell on a stool. It still doesn't tell us the evidence of the factors you have to show to get a self-defense instruction, which means you've got to show a perception of danger that is objectively reasonable, even if inaccurate, and a necessary response that is proportional to the perceived danger. Nothing of what you're saying tells us that Mr. Lawson attacked Mr. Brown and that Mr. Brown feared for his life. So again, I do see this as a two-part argument. So in terms of the evidence that Mr. Lawhead was the initial aggressor, we again have, I know it feels like a dearth of evidence. There's not much evidence at all about what happened. The government, I'll step away from that. I understand your concern. You want me to focus on the evidence that supports our case. The question that was asked to the medical examiner was falling into the bunk. Could that do it? And he says that has to be a pretty dramatic fall. Seems skeptical, but he does not rule it out. And then the question, what about falling straight down onto this metal stool? And he says, yes, that's possible. He says, yes, the fact that there's no hand injuries on Mark Lawhead, still consistent with the fight. These injuries, consistent with the fight. This could have happened with this fall. Nobody has any doubt there was a fight. That's not the issue. And the only way that Mr. Lawhead falls down onto this stool is if he went up to the top bunk where Mr. Brown was seen asleep very shortly before this altercation occurred. I understand that I'm pointing to a dearth of evidence. What support do you have for that? I mean, the only way that could have happened, that he would have fallen and hit the stool, is he climbed up onto Mr. Brown's bunk? There are many ways one could break one's back ribs. In terms of a dramatic fall onto this stool, we have a person who is 5'11", well over 200 pounds, and I don't need to show it's the only way, so I'll step back from that. That is a mechanism for this to happen. The government must disprove this beyond a reasonable doubt. They have to disprove it if you've got enough for a defense. If you don't have enough for a defense, the government doesn't have to disprove anything. You have to show that you have the basis for a defense. Before we get too far down the line, let me ask you just a legal question. Let's use very concretely the question of the jaw, and the fact that he claims his jaw was broken. Do we have to credit that claim? And to be more specific, you have Britt and Toledo that talk about crediting the defendant's testimony. You don't have any testimony here. Why do I have to credit that he says his jaw was broken when he refuses to be examined so that anybody could know that his jaw was broken? Why do we have to accept that? Because Stevenson v. United States says that credibility and the weight of evidence is a question for the jury, and that all of the case law— The fact of him saying his jaw was broken, the question is not whether— I mean, that is the fact. My point is, do we have to consider that in the universe of things that determines whether you're entitled to the instruction? There are actually two steps. One, his jaw was broken, and Mr. Law had broke it. But I'm going to stick right now with the question of his jaw being broken, and what I'm saying is I don't see any reason I have to accept that. There's no other evidence to support the fact that his jaw was broken but him saying it, right? And, Your Honor, I recognize that the specific issues in cases have had to do with testimony, and therefore the statements of this Court have talked about crediting the defendant's testimony. But every case consistently has said that weight and credibility are questions for the jury, and that you must draw every reasonable inference in favor of the defense. And that contradictory statements by the same defendant, which we don't have here— we have contradictory evidence but not contradictory statements— are not enough to defeat that and to allow this Court to discount it. We have evidence that was admitted. It was admissible. We have nothing in the law that distinguishes between types of evidence. Give me what evidence are you talking about? What evidence do you have that was introduced? The only evidence you have is evidence coming from third parties, in part, as to what Mr. Brown said to them. My jaw is broken. Well, that's a whole lot different than Mr. Brown saying under oath that my jaw is broken, which you had in Toledo and you had in Brit. And so, well, I struggle to see what I'd do with that. But beyond that, even if his jaw is broken, it doesn't go to the basic question of what does that prove? I mean, if everybody accepts the fact that he was in a fight, so what? His jaw was broken. That doesn't say that it establishes that he had some fear that his life was in— I mean, Judge McHugh articulated the standard, and there, you know, as lawyers, we know we could add an A, we could add a B, we could add a C, we could add a D. There are a lot of elements to that standard. I don't see any proof to establish any of that. Okay. And, Your Honor, in an earlier question, you asked about—you mentioned, you know, if we raise enough, then the government must disprove the unreasonable doubt. In Barnett, this court made very clear that the existence of the reasonable doubt is enough. There is no additional burden of production beyond pointing out where on the record the reasonable doubt as to self-defense exists. Most certainly. But the point I'm making is I don't see you doing that. I mean, if we've got a speculation, a reasonable juror is not going to find a reasonable doubt based upon speculation. That's not so. That raises the question again. What is it that would have allowed a reasonable juror, beyond speculating about what went on in this cell, to conclude that Mr. Brown met all of the elaborate standards that's been set out that he has to show? Proportionality, the fact that he has subjective fear, he had objective fear. How do we know that? So, I know that Your Honor has trouble with the argument I'm making about initial aggressor. But assuming you could accept that there is some evidence of initial aggressor, I think everything falls in place. In the United States Supreme Court in Farmer v. Brennan says, if a risk to an inmate is obvious, then we can presume that is some evidence of the jailer's knowledge of that risk. Certainly, it would be the case that if the risk to an inmate is obvious, that inmate himself can be, that is some evidence that the inmate himself had that subjective belief. If we're relying on Farmer v. Brennan, I think we're moving pretty far down the road. I mean, Farmer v. Brennan is not a criminal case. It has nothing to do with this case. But let's assume if the jailer would know there was a risk, then the inmate would know there's a risk. Well, Mr. Lawhead would know there's a risk from Mr. Brown, too. And so the question, going back to Judge McHugh's point, all right, so they both are at risk from each other. They both agree to live with each other. I think you had a line in your brief about stab on sight. Well, there wasn't a stab on sight because they were living with each other. So what do we derive from the fact that they both view each other as a threat? And, Your Honor, again, that's why the first half of my briefs is always focusing on this idea that it is not proven beyond a reasonable doubt that Mr. Lawhead wasn't the initial aggressor. If Mr. Lawhead attacks, if Mr. Brown just says, this is a dangerous, may I finish? Yes, of course. If Mr. Brown just thinks, okay, Mr. Lawhead is a dangerous, he is a danger to me, we're missing eminence. We're missing certainly a lot of issues. But if Mr. Brown has been attacked, imagine a situation where there's a video camera in this cell. It is silent. It is only pointed at the top bunk. And it shows Mr. Lawhead climbing up there, and it shows Mr. Brown asleep, and it shows Mr. Brown waking up to this and pushing Mr. Lawhead down onto the stuff. We'd love to have a video. Sure. Because I think that video would be great. He'd be showing us that video. We don't have the video. That's the problem. But if the evidence supports a reasonable inference that that is what happened. So, again, I'm premising this on that first half of my argument. But if so, that, in this situation, under this legal framework, where all reasonable inferences must be drawn in favor of the defendant, is the equivalent of a video. And if we have that video, then the question for this Court, when it comes to those specific elements of self-defense, is would that do it? Would that be enough? In combination with the other evidence, that these men are locked inside, that they're isolated, that you can't scream for help, that you can't wait for help, there's no means of retreat, not to mention no obligation to retreat, would that be enough? And so that's why I see this as a two-step argument. But given the extremely friendly nature of this standard of review, and that this Court has never affirmed the denial of a self-defense instruction in a homicide case, I believe that we have met that standard, and that this is not a request for a jury to speculate, but rather for these conversations to be had in the jury room instead of with judges. Are you arguing this case or your other case? This one. This one. And we've never affirmed it, but the reality is this case is not like the ones that we've had before, right? I believe that's true. I think that the closest case – I know I'm very over, if I may continue. I'm letting you go over, so go. Thank you. I think the closest case here is going to be the Ninth Circuit case in our brief, United States v. Morton. And it's slightly different because that's an assault on a federal officer case, but the Ninth Circuit – so the defense is slightly different. It still involves a subjective belief. It still requires a bona fide – I don't remember exactly the phrase, but a belief that the person is not a law enforcement officer. And in that case, the Ninth Circuit said, is it relevant that the defendant has not testified? There was also no statement at all by the defendant in that case. And the court relied on two different types of evidence. One of them was a bystander who says, I saw this, and I wasn't convinced this guy was law enforcement. So they say reasonable to make that inference from there, that the defendant felt the same way. I recognize that's different than the evidence here. But it also relied on the circumstances. It relied on the fact that the person's badge wasn't immediately visible, that he was wearing plain clothes, that he looked like a construction worker near a construction site, that it was a dangerous neighborhood. I'll go back and refocus on that case. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the court, Lisa Williams representing the United States of America. What the defense is asking this court to do is push beyond the boundaries of Toledo and Britt and impose a new standard for entitlement to a self-defense instruction. One that is not tethered to any evidence of a defendant's subjective belief, but instead tethered to some objective standard of, well, of course someone would feel threatened in this position and want to respond with force. Because there is simply no evidence in this record that Mr. Brown held a subjective belief that deadly force was necessary and he had to defend himself against such force. Is it your position that a defendant has to testify in order to be entitled to a self-defense instruction? No, it is not, Your Honor. There can certainly be evidence in addition or separate from a defendant's testimony that speaks to his subjective belief. We'll confront that situation in our next case. I'm sorry, go ahead. But we don't have a video. Correct. You've got two people locked in a cell together and one kills the other. If the defendant doesn't testify, the only one who survived the altercation, I mean, what evidence can a defendant come up with in order to prove the right to a self-defense instruction in that situation? Sure. So in this case, if Mr. Brown would have had defensive wounds on his person, suggesting that he was engaged in an altercation where he had to defend himself? Why would that tell us? I mean, you know, they're obviously fighting to the death, and they're both going to have wounds, defensive and offensive. Except, Your Honor, that Mr. Brown didn't have any wounds. A broken jaw. Well, he claims he has a broken jaw. Well, what do you do? Well, let's talk about that. What do you do with the broken jaw claim? I had some conversation with opposing counsel about that. I mean, in Bretton, Toledo, if Mr. Brown had gotten on the stand and said he had a broken jaw, we clearly would have to take that. What do we have to do in this situation? So Toledo does say, Your Honor, that for the purpose of determining the sufficiency of the evidence with respect to the jury instruction, the testimony has to be accepted most favorably to the defendant. So I think this Court does have to accept that Mr. Brown had a broken jaw. Okay. But what Mr. Brown didn't say is that he broke my jaw during the fight. There's no evidence of that. The only evidence is that Mr. Brown said, I have a broken jaw. That might be getting into an inference rather than speculation. If, you know, you've just come into a cell where they've had a fight and one person is dead and he says, my jaw is broken, I don't think that's too far afield of a reasonable inference. Except, Your Honor, there's no bruise. I mean, again, imagine the force necessary to cause it. The only issue is whether the jaw is broken, not whether it was broken in the fight, and they're two different issues. I think that you can accept that the jaw is broken without accepting that the jaw was broken during the fight. Those are two different issues. And if the jaw was broken two weeks ago in something completely unrelated to the fight, that would explain why he's not in immediate pain, why there's no bruising. And let me just be clear on your point about us accepting that the jaw was broken. Toledo used testimony in connection with the fact of a defendant who actually testified. So, I mean, I'm not saying that it's wrong. I'm just trying to, I mean, when I read that, it immediately occurred to me that at least there's a question as to whether that maps onto this situation. Your Honor, I think that hits the nail on the head. Excuse me. It's not that there was a fight. It's that there has to be evidence of the defendant's subjective belief. And in Toledo, the defendant took the stand and said, I was scared. I thought he was going to kill me. That gets me back to, does the defendant have to testify in order to have a right to a self-defense instruction? So, and here's another example, Your Honor. If there was some sort of, so after this fight, the defendant alerts security and says he OD'd. If instead he would have said, oh my gosh, he attacked me in the middle of the night and I had to defend myself, come get him. And for somehow that evidence, it's hearsay we'd have to work through. But if it was admissible at trial, then that would be evidence of his subjective belief that doesn't come from the defendant testifying. And maybe they get it in as an excited utterance. But there's a world in which a defendant's statements come into evidence without the defendant testifying, and that would speak to his subjective belief. But that evidence doesn't exist in this case. Well, we do have the jaw, I mean, from somebody else. We don't have him talking about his subjective belief, but we do have him talking about his jaw that we get from somebody else. And I'm not going to belabor the point, but the language in Toledo is full credence to the defendant's testimony. And obviously we don't have the defendant's testimony here. But let's assume for the moment that we accept the fact that the jaw is broken. Your point is that that doesn't tell us that the jaw was broken on that night, right? It doesn't tell us that it was broken in a fight? Correct, Your Honor. Yeah, let's make a record. Yes. No, that's right. I shouldn't. I do try cases. I should know better than that. And it doesn't tell us that he was in fear for his life, right? That's correct. And that's the problem with just that one single piece of evidence standing by itself, is this Court has never held that a fearful situation by itself entitles a defendant to self-defense instruction. It's always held that the defendant has to have a subjective belief that then the jury measures, is it objectively reasonable? And so what we have here is a failure of proof on that first prong, that there is a subjective belief by this defendant that he was in fear for his life. I think that if you read Toledo and Britt, if the defendant testifies and says, I was afraid of my life, they're going to get the self-defense instruction. They're going to be entitled to that. It's not up for debate at that point. I think that's what Toledo and Britt stand for. What they don't stand for is to then say, well, any time anyone may be in fear of their life, let's just give them self-defense. There has to be some evidence. Well, and I guess the argument on the other side is the evidence is that these were members of competing gangs, that there would be natural animosity between, and they're in a situation where nobody's going to come to help because they don't have a third-party witness there, or someone who's going to quickly break it up, and so that you can infer from those facts that once an altercation started, that he would be in fear for his life. And I think one of the problems with that train of thought is the very end of what you said, Your Honor, once an altercation started, because it's incumbent on the defendant to prove that Mr. Lawhead started the altercation in order to be entitled to self-defense. And this, too, is exactly what the district court was concerned with and why it didn't give the instruction, because the court, I thought, gave a really well-reasoned explanation and really gives this court a record to evaluate whether or not it abused its discretion. It talks about Toledo. It talks about the other cases that it had read. And it says that, you know, certainly there's some aspects that raise reasonable doubt maybe for premeditation, but the testimony that's been referenced doesn't go to the defendant's belief, which is the standard in Toledo. And that's the puzzle piece here, Your Honor, that's just missing, is that there's just no evidence as to what was going on in Mr. Brown's mind, and without that, he cannot show entitlement to a self-defense instruction. He can use all of these inferences and all of this speculation to try to attack the government's claim that he premeditated this murder, that he lied in wait to attack Mr. Lawhead. Those are certainly inferences and arguments that can be made in closing, but to trigger the entitlement to a self-defense instruction, the case law in the Tenth Circuit simply requires more. Well, the case law in the Tenth Circuit, as your opposing counsel has already stated, the requirement is very, very low that you have to come up with as a trial lawyer defending it. I mean, it's low. And that's what I'm looking for. Where is the evidence? Even no matter how low it may be, if it's evidence, our law in this circuit and the district judges have been applying, is that you get the defense. Am I correct? The bar is very low. The bar is very low that as long as there's evidence of a defendant's subjective belief. That's simply been my question. Show me the evidence. I mean, I'm still dwelling on that first question that Judge McHugh asked. Show me the evidence. I agree, Your Honor. And the government's position is it just does not exist in this case. There's not one shred of evidence, even circumstantial evidence, that you can point to to then build on all of these inferences. What do we do with the, what role does the methamphetamine in the system of Mr. Lawhead play into this? I mean, does it provide the basis for some inference that he was more aggressive, more erratic, anything of that sort? No, Your Honor. Plenty of people use methamphetamine every day, and they don't go around and murder people. Well, thanks for informing me of that. And I don't think I need to inform the court of that. We have a raised hand. People who are currently on meth. So I don't think that, the government's position is that that doesn't give any evidence towards whether or not he was aggressive during the fight. And it's also a low level. And, again, that's an example of really trying to pull a reasonable inference from evidence that does not exist. Yes, they did find medication prescribed to Mr. Lawhead in his cell, right? And so we can assume that he was supposed, you know, the prison's not giving out extra doses. So he was supposed to take that medication, and he didn't. And from that, they argue that he was in a psychotic break, delusional. But that is a leap way too far, because, you know, I wrote they found 14 and a half pills, nine of which were Benadryl. So I don't think anybody's going on a psychotic break because they didn't take Benadryl. So we've got four and a half pills that he didn't take. We don't know anything about the effects of failure to skip those doses of medication on his mental health, if there were any. So it's really a leap too far. Let me ask you this. If there had been evidence that Mr. Lawhead had told someone else that he was going to murder Mr. Brown that night, would that be enough for self-defense instruction? I think it's certainly closer, Your Honor. I mean, at least then there's some evidence that he was the initial aggressor that you could build these reasonable inferences on. So that's a different case, and I think that that would be a different argument. But again, that's just not here. And I think that goes back to the point that the courts grapple with, like, does the defendant have to testify, or are there other ways to show that this happened? And that's why I said at the beginning, I don't think the defendant has to testify in order to trigger entitlement to the instruction, but there does have to be evidence of his subjective belief. And so, for example, if the evidence was, oh, well, Mr. Lawhead told me that he was going to jump Mr. Brown. And so at cafeteria that day, I told Mr. Brown, hey, you better be careful. Watch your back. He's coming to jump you. Then that would be evidence that the defendant knew that he was in danger, that he may be threatened, and may be enough to get entitled to the jury instruction. And if there are no other questions from the panel, then the government will rest on the remaining of its briefing. Thank you. Thank you. You have, if you wanted, 40 seconds. Just as a comment, I'm assuming you've been listening to all these questions from the next case that's going to be. All right, we're ready. All right, thank you. I think that people are conceiving of this subjective belief as some unique standard that does not exist elsewhere in the law, that requires direct evidence of what was going on in the defendant's head. And it is not different than other types of mens rea. And in fact, subjective belief is something that is proven in the courts through circumstantial evidence all the time. Dying declaration, subjective belief in the eminence of death. Work product, subjective belief that litigation was a real possibility. Knowledge, deliberate indifference, requires did not subjectively believe it to be untrue. Enticement of a minor when you have an undercover. Believed the person was under the age of 18. This is simply not different. Thank you, counsel. Case is submitted.